**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| DANIEL WALLACE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Complaint No.: 1:05-cv-0678-SEB-VSS |
| | ) | |
| INTERNATIONAL BUSINESS | ) | |
| MACHINES CORPORATION; | ) | |
| RED HAT INC.; | ) | |
| NOVELL, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT**
**INTERNATIONAL BUSINESS MACHINES CORPORATION'S**
**MOTION TO DISMISS**

Plaintiff's two-page complaint fails to satisfy even the most elementary standards of pleading in federal court. From the little that plaintiff did plead, however, it is evident that he does not have standing to bring an antitrust suit, cannot demonstrate antitrust injury, failed to adequately allege a combination or conspiracy and, under the rule of reason, cannot show any unreasonable restraint of trade or anticompetitive effect in a relevant market. The complaint must therefore be dismissed under Rule 12(b)(6).

## <u>INTRODUCTION</u>

Plaintiff alleges the defendants "have used or conspired to promote a copyright licensing scheme employing the GNU General Public License [H.I.]" (hereinafter "License") "to fix the prices of computer programs," and seeks a permanent injunction of Section 2(b) of the License. Compl. at 2. Defendant International Business Machines Corporation ("IBM") interprets this as

a claim under Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, brought for injunctive relief pursuant to § 16 of the Clayton Act, 15 U.S.C. § 26.

Because the complaint is so vague, we must look also to the License attached to the complaint for additional details about plaintiff's allegation. According to the License's Preamble, the purpose of the License is to guarantee the "freedom to share and change free software--to make sure the software is free for all its users." License at 1, para. 2. Section 2(b) of the License, the sub-section plaintiff seeks to enjoin, requires that any such modifications must "be licensed as a whole at no charge to all third parties under the terms of this License." *Id.* at 2. The cost of any intellectual property rights in a computer program covered by the License must therefore be free, and the "price" plaintiff alleges is fixed at zero.

Plaintiff's only allegation of injury is that the alleged scheme denies him "an opportunity to earn future revenue in the field of computer programming." Compl. at 2. This allegation of injury fails to state a claim cognizable under the antitrust laws for at least two reasons. First, the alleged injury is in a different market than the alleged price fixing, and is otherwise insufficiently connected to the alleged violation to grant the plaintiff antitrust standing. Second, the alleged injury is not the type of injury Congress intended to protect against in passing the antitrust laws, so plaintiff cannot show the requisite antitrust injury. Plaintiff's alleged harm flows only from additional competition in the marketplace, which is not the sort of harm with which the antitrust laws are concerned. Plaintiff therefore has no standing to bring his claims and his case should be dismissed.

The flaws in plaintiff's standing and injury claims are inherent in who the plaintiff is and cannot be cured by amendment. *See Car Carriers Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1105

& n.12 (7th Cir. 1984) (upholding dismissal with prejudice where the problems with the complaint were inherent and incurable). The plaintiff alleges he is a competitor who may be harmed in the future because of increased competition. This is not the type of harm the antitrust laws were designed to prevent, and the complaint should therefore be dismissed with prejudice.

Even if plaintiff had standing to bring this action, which he does not, he also fails to allege the concerted action required for all Section 1 claims. His conclusory allegations of conspiracy, without a single explanatory fact, is insufficient as a matter of law to provide the defendants with the required notice of his claims.

Finally, given that the plaintiff alleges that the maximum price a licensee may charge to subsequent licensees for rights under the License is zero, plaintiff's claim is best analyzed as a challenge to a maximum vertical price fixing agreement, which is to be reviewed under the "rule of reason." *See State Oil v. Kahn*, 522 U.S. 3 (1997). Plaintiff fails to allege any unreasonable restraint of trade or anticompetitive impact in a relevant market, and makes no allegation that IBM, or any defendant for that matter, had market power. As these pleading elements are required under the rule of reason, plaintiff's complaint should be dismissed on these grounds as well.

<u>**ARGUMENT**</u>

## I.    **LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) empowers this Court to dismiss a claim for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). A complaint must allege the operative facts that support the identified causes of action in order to survive a motion to dismiss, *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998), and must "give

the defendants fair notice of what the claim is and the grounds upon which it rests." *Wasson v. Peabody Coal Co*., 2003 WL 1089519 at *2 (S.D. Ind. 2003) (Barker, J.) (citing *Walker v. Benjamin*, 293 F.3d 1030, 1039 (7th Cir. 2002). The Court is "not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002); *see also First Ins. Funding Corp. v. Fed. Ins. Co*., 284 F.3d 799, 804 (7th Cir. 2002); *SMC Corp. v. Peoplesoft USA, Inc.*, No. 1:00-CV-01095-LJM-VS, 2004 WL 2538641, *2 (S.D. Ind., Oct. 12, 2004) (stating that "the Court is not required to accept Plaintiff's legal conclusions.").

The Seventh Circuit has further held that, notwithstanding the liberal pleading rules, an antitrust plaintiff must do more than make conclusory allegations to construct his claim:

> Thus, in the context of a 12(b)(6) challenge, the question is whether, if we accept all the allegations--including those relating to purpose and intent--as true, the plaintiffs have successfully pleaded a contract, combination, or conspiracy in restraint of trade within the meaning of the Sherman Act. The pleader may not evade these requirements by merely alleging a bare legal conclusion; if the facts "do not at least outline or adumbrate" a violation of the Sherman Act, the plaintiffs "will get nowhere merely by dressing them up in the language of antitrust." When the requisite elements are lacking, the costs of modern federal antitrust litigation and the increasing caseload of the federal courts counsel against sending the parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint. A contrary view would be tantamount to providing antitrust litigation with an exemption from Rule 12(b)(6).

*Car Carriers*, 745 F.2d at 1106-07 (citations omitted).

Furthermore, although there is no heightened pleading standard for antitrust cases, "it is quite possible for a plaintiff to plead himself out of court by alleging facts that could not under any circumstances constitute an antitrust violation." *Alpha School Bus Co. v. Wagner*, 2004 WL 1368804 (N.D. Ill. 2004) (citing *Hammes v. AAMCO Transmissions, Inc.,* 33 F.3d 774, 782 (7th Cir. 1994)). A court may take judicial notice of a document referenced in the complaint that is

central to the claim without converting a motion to dismiss into a summary judgment motion. *Wright v. Assoc. Int. Cos*., 29 F.3d 1244, 1248 (7th Cir. 1994) (holding that documents referenced in the complaint that are central to the claim are part of the pleadings); *Venture Assoc. Corp. v. Zenith Data Sys. Corp*., 987 F.2d 429, 431 (7th Cir. 1993) (same); *see also Marks v. CDW Computer Centers, Inc.,* 901 F. Supp. 1302, 1309-10 (N.D. Ill. 1995).  When a document contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations. *North Indiana Gun & Outdoor Shows v. City of South Bend*, 163 F.3d 449, 454 (7th Cir. 1998). A plaintiff may therefore "plead himself out of court by attaching documents to the complaint that indicate he or she is not entitled to judgment." *In re Wade*, 969 F.2d 241, 249 (7th Cir. 1992).

Antitrust cases are frequently dismissed on the pleadings where, as here, a plaintiff is unable to state a claim.  *See, e.g., Midwest Gas Service Inc. v. Indiana Gas Company, Inc*., 317 F.3d 703 (7th Cir. 2003); *Endsley v. City of Chicago*, 230 F.3d 276, 282 (7th Cir. 2000); *International Brotherhood of Teamsters, Local 734 Health and Welfare Trust Fund v. Philip Morris Inc.*, 196 F.3d 818 (7th Cir. 1999); *Funteas v. BP Products North America, Inc.,* 2005 WL 736226 (N.D. Ill. 2005); *Alpha School Bus*, 2004 WL 1368804 (N.D. Ill. 2004); *Goodloe v. National Wholesale Co., Inc.,* 2004 WL 1631728 (N.D. Ill. 2004); *Asahi Glass Co., Ltd v. Pentech Pharmaceuticals, Inc.,* 289 F. Supp. 2d 986 (N.D. Ill. 2003); *In re Copper Market Antitrust Litigation*, 300 F. Supp. 2d 805 (W.D. Wisc. 2003);  *Sanderson v. Brugman*, 2001 WL 699876 (S.D. Ind. 2001); *Watts v. Network Solutions, Inc*., 1999 WL 778589 (S.D. Ind. 1999).

II.   **THE COMPLAINT MUST BE DISMISSED BECAUSE PLAINTIFF DOES NOT HAVE ANTITRUST STANDING AND CANNOT DEMONSTRATE ANY ANTITRUST INJURY**

The allegations in the complaint make clear that the plaintiff cannot show the requisite antitrust standing or antitrust injury.  Plaintiff alleges no connection or nexus between the market where the alleged anticompetitive acts occurred and his alleged injury, as required for antitrust standing.  Furthermore, even if plaintiff could show there were such a nexus, his alleged injury is to him as a competitor rather than to competition, and is therefore not the type of injury Congress intended the antitrust laws to protect against.

A.   *Plaintiff Lacks Antitrust Standing.*

As a threshold matter, a plaintiff is without standing to assert a violation of the Sherman Antitrust Act because he has alleged an injury in a different market from the claimed anticompetitive acts and alleged no nexus between them.  To have antitrust standing, a plaintiff must be either a direct purchaser or a competitor in the market in which trade was restrained. *Associated Gen. Contractors of California v. California State Counsel of Carpenters*, 459 U.S. 519, 539 (1983) (finding the plaintiff "was neither a consumer nor a competitor in the market in which the trade was restrained."); *Serfecz v. Jewel Food Stores*, 67 F.3d 591, 598 (7th Cir. 1995) (holding that antitrust standing should be granted "only to those who, as consumers or competitors, suffer immediate injuries with respect to their business or property.") (citation omitted).

Furthermore, plaintiff must "demonstrate a direct link between the antitrust violation and the antitrust injury."  *Sanner v. Bd. Of Trade of City of Chicago*, 62 F.3d 918, 926-27 (7th Cir. 1995) (internal quotation marks and citation omitted).  An antitrust standing inquiry requires an analysis of "the plaintiff's harm, the alleged wrongdoing by the defendants, and the relationship

between them." *Id*. at 927 (internal quotation marks and citation omitted).   Factors a court might consider include the causal connection between the alleged antitrust violation and the harm to the plaintiff, the directness between the injury and the market restraint, and the speculative nature of the damages. *Id*.; *see also Midwest Gas,* 317 F.3d at 710 (upholding dismissal for lack of antitrust standing because a plaintiff failed to show a direct link between its "claimed injury and the alleged market restraint.").   In other words, a plaintiff "must show that its injury flows from that which makes the conduct an antitrust problem: higher prices and lower output." *International Brotherhood,* 196 F.3d at 825. *See also Chicago Prof'l Sports Ltd. Partnership v. NBA*, 961 F.2d 667, 670 (7th Cir. 1992) (an antitrust plaintiff must show that the alleged injury results from "acts that reduce output or raise prices to consumers."); *Ball Mem'l Hosp., Inc. v. Mutual Hosp. Ins., Inc*., 784 F.2d 1325, 1334 (7th Cir. 1986).

The plaintiff in the present case lacks antitrust standing because his claimed injuries are in a completely different market than the alleged anticompetitive acts, and he has alleged no nexus between them.   The purported antitrust violation is a "licensing scheme" used "to fix prices of computer programs." Compl. at 2.   The only claim of injury, however, is that plaintiff is denied "an opportunity to earn future revenue in the field of computer programming." Plaintiff describes, then, two distinct markets: a products market for "computer programs" (perhaps including "computer software") and a services market for "computer programming." Plaintiff fails to define these overly broad markets, but even giving plaintiff the broadest definition for each, plaintiff has failed to allege any connection whatsoever between the alleged violation and his claimed injury.

To have antitrust standing, plaintiff must allege he is a direct purchaser or competitor in the products market for "computer programs." *Serfecz*, 67 F.3d at 598.   Plaintiff fails to allege

he ever purchased or obtained any of the affected "computer programs" from any of the defendants, and there is no allegation that he ever paid any overcharge (or anything at all) as a result of the alleged price fixing.  Plaintiff also fails to allege he competes with any of the defendants in this undefined market for "computer programs."

Instead, plaintiff's claimed injury is apparently as a competitor or potential competitor in the services market for "computer programming."  He does not allege any violation concerning this "computer programming" market, however, and does not even allege that any of the defendants compete with him in this market.  There is therefore no nexus between the alleged violation and the claimed injury.

Furthermore, plaintiff also lacks antitrust standing because his claimed injury is too speculative, one of the factors to consider in determining whether there is a nexus between violation and injury.  *See Midwest Gas,* 317 F.3d at 710.  He claims only a loss of "opportunity" to earn "future" revenue.  Compl. at 2.  He does not allege he has suffered any damages to date, and does not even allege he is currently competing or even prepared to compete in the "computer programming" market.  To the extent plaintiff is trying to claim standing as a potential entrant into the "computer programming" market, he has failed to meet the "intention and preparedness" requirement for antitrust standing.  *See, e.g., Grip-Pak, Inc. v. Illinois Tool Works, Inc*., 694 F.2d 466, 475 (7th Cir. 1982).  On remand from the 7th Circuit's decision in *Grip-Pak, Inc.*, the lower court applied the 7th Circuit's instructions using the "intention and preparedness" test requiring "some varying combination of the following four factors: 1) background and experience in the prospective business; 2) affirmative action to engage in the same; 3) ability to finance the business; and 4) consummation of contracts."  *Grip-Pak, Inc. v. Illinois Tool Works, Inc*., 651 F. Supp. 1482, 1501 (N.D. Ill. 1986).  The lower court reasoned that "[t]he inquiry is in part one of

standing--whether the plaintiff can prove an injury to business or property--and in part one of proof-whether the plaintiff can prove damages with reasonable certainty." *Id.* at 1501.  Likewise, in this case the plaintiff has not proven damages or shown that he has taken any substantial demonstrable steps to enter an industry to recover such damages.

### B.   *Plaintiff Lacks Antitrust Injury.*

In addition to showing a nexus between the alleged anticompetitive acts and the alleged harm, a plaintiff must also show an antitrust injury—that is, the type of injury the antitrust laws were designed to prevent.   It is now axiomatic that "[t]he antitrust laws . . . were enacted for 'the protection of competition, not competitors.'"  *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 488 (1977) (citation omitted).

The required showing of antitrust injury applies to the *per se* analysis as well as the rule of reason.   In *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328 (1990), the Supreme Court held that a competitor who alleged only that he had lost sales and profits due to his competitor's vertical maximum price fixing scheme lacked the requisite antitrust injury to sue under the antitrust laws, regardless of whether a *per se* violation had been alleged.[1]  Thus, an alleged antitrust injury must adversely impact the consumer and competition, not merely the competitor-plaintiff.  *See Olympia Equip. Leasing Co. v. Western Union Tel. Co*., 797 F.2d 370, 375 (7th Cir. 1986).   This applies both to claims for damages as well as injunctive relief. *Cargill, Inc. v. Monfort of Colorado, Inc*., 479 U.S. 104 (1986) (holding that a plaintiff who sought only injunctive relief still needed to show a threat of antitrust injury, and the mere allegation that a merger would cause the plaintiff to lose profits had not satisfied that

---

[1]  As discussed below, after *State Oil v. Khan,* it is now clear that courts are to apply rule of reason treatment to vertical maximum price fixing arrangements.

requirement).  The complaint should be judged in light of the circumstances and market context, including whether conclusory allegations are economically sensible.  *See Stamatakis Indus., Inc. v. King*, 965 F.2d 469, 471 (7th Cir. 1992).

The injury alleged by the plaintiff in this case is not the requisite "antitrust injury."  He does not allege an injury to competition or to the market, but only to himself as a competitor or potential competitor.  His alleged lack of "opportunity" for him to "earn future revenue" is focused on his own income, not any injury to competition or consumers.  Common sense dictates that a "licensing scheme" that requires consumers pay no more than zero dollars to use and copy the programs under the License would benefit consumers, not harm them, and any "injury" flowing from there could not be an "antitrust injury."

Plaintiff apparently alleges that he cannot compete because he is not able to earn income by licensing to others any modifications he made to a program he obtained for free under the License, given that all such modifications must also be licensed at no charge.  This allegation also clearly fails the antitrust injury test.  Here, even assuming plaintiff charged for distribution or servicing of the program (acts not prohibited by the License), plaintiff's potential customers would benefit from lower prices for licensing the modified program (i.e., no cost for the actual use of the program) compared with the price they would have to pay if plaintiff were permitted to charge for the license.  Even if plaintiff were "injured" by his inability to license his modifications for a fee, it would not be the type of injury to competition Congress envisioned for the antitrust laws.

Plaintiff would not be able to cure his lack of antitrust injury or antitrust standing by amendment.  From the little he has alleged, it is already clear that plaintiff is, if anything, a

competitor of the defendants, and a competitor in a different market from the alleged anticompetitive act. The plaintiff is who he is and leave to amend cannot cure such a characteristic. Accordingly, the complaint should be dismissed with prejudice. *See Car Carriers*, 745 F.2d at 1105 and n. 12.

### III.   THE COMPLAINT MUST BE DISMISSED BECAUSE IT FAILS TO ALLEGE THE CONCERTED ACTION REQUIRED IN EVERY SECTION 1 CLAIM.

Perhaps no antitrust principle is more fundamental than the rule that the challenged conduct must have resulted from a conspiracy or agreement for it to violate Section 1 of the Sherman Act. *See generally Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752 (1984) (emphasizing that § 1 simply does not reach unilateral conduct); *Contractor Utility Sales Co. v. Certain-Teed Products Corp.*, 638 F.2d 1061 (7th Cir. 1981); *Wagner v. Magellan Health Services, Inc.*, 121 F. Supp.2d 673, 679 (N.D. Ill. 2000) ("Solely unilateral conduct, regardless of its anti-competitive effect, is not prohibited by Section 1.").

As a preliminary matter, plaintiff does not even allege facts to support a conclusion that defendants did anything, let alone anything illegal. Plaintiff failed to allege any facts at all relating to IBM or either of the other defendants, other than the conclusory statement that they "used or conspired to promote" the License. This conclusory statement is insufficient as a matter of law to state any claim. *See Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526 (1983) ("It is not . . . proper to assume that the [plaintiff] can prove any facts that it has not alleged."); *Havoco of Am., Ltd. v. Shell Oil Co.*, 626 F.2d 549, 558 (7th Cir.1980) ("We are simply unwilling to construe pleadings so liberally as to imply a comprehensive scheme to monopolize . . . where the only mention of such a 'conspiracy' in the complaint is the naked statement that one exists."); *Indiana Medical Group v. American*

*Arbitration Associates*, 149 F. Supp. 2 615, 623 (S.D. Ind. 2001) ("We accept as true all well-pleaded factual allegations and draw all favorable inferences in favor of the plaintiff . . . . However, 'a complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6).'"); *Blanton v. City of Indianapolis*, 830 F. Supp. 1198, 1203 n. 7 (S.D. Ind. 1993) (A "plaintiff must plead some fact or facts tending to support his allegation….") (citation omitted).  As plaintiff fails to allege sufficient facts of concerted activity to give notice to the defendants of his claims, the complaint must be dismissed on this ground alone.  In the alternative plaintiff must at least be required to make a more definite statement of his claims.

Plaintiff could not in good faith, however, allege any facts showing a combination or conspiracy concerning the License.  The License by its nature is a series of unilateral decisions to make certain code public, and the activity apparently challenged here is the unilateral decision by a company to distribute a program under the License rather than any number of other means for distribution.  The use and promotion of the License is, therefore, a unilateral act, and plaintiff cannot show the required combination or conspiracy.  The complaint should be dismissed on this basis.

## IV.   THE COMPLAINT MUST BE DISMISSED BECAUSE IT FAILS TO STATE A CLAIM UNDER THE RULE OF REASON

Even if plaintiff had standing to bring this action, which he does not, and properly alleged concerted action, which he has not, the complaint must still be dismissed because his claims are to be analyzed under the rule of reason as a vertical maximum price fixing claim.  Because plaintiff has failed to allege the requisite competitive impact or any unreasonable restraint of trade in a relevant market, the complaint must fail.

**A.**     ***The Allegations In The Complaint Should Be Analyzed Under The Rule Of Reason.***

The essence of the complaint appears to be directed at Section 2(b) of the License, which requires licensees to distribute at no charge any derivative works which they create using software covered by the License. The "licensing scheme" plaintiff alleges therefore must be a use by defendants of Section 2(b)--that is, a vertical restraint on the maximum price subsequent licensees may charge for any modifications they make to the software.

Assuming for the sake of argument that plaintiff has standing to bring this complaint, this restraint would be characterized as a vertical maximum price restraint. The United States Supreme Court in *State Oil Company v. Khan*, 522 U.S. 3 (1997), reversing former precedent, held that such vertical maximum price fixing agreements are not *per se* unlawful. Moreover, even before *State Oil*, courts recognized that the unique attributes of intellectual property licenses made *per se* treatment of vertical price restraints in software licenses inappropriate. *See LucasArts Entertainment Company v. Humongous Entertainment Company*, 870 F. Supp. 285 (N.D. Cal. 1993) (granting summary judgment *against* licensee who claimed that license provision regulating resale prices for derivative works violated the Sherman Act). Furthermore, plaintiff's conclusory allegations of "price fixing," normally afforded *per se* treatment, "must be scrutinized to determine whether such a characterization is appropriate." *Car Carriers*, 745 F.2d at 1108. Plaintiff's allegations must therefore be evaluated under the rule of reason. *Id.*

**B.**     ***Plaintiff Fails To Allege An Unreasonable Restraint Of Trade Or Any Anticompetitive Effect In A Relevant Market.***

A plaintiff under the rule of reason analysis must show that the challenged restraint has resulted in an unreasonable restraint of trade or an anticompetitive effect in a relevant market. *42nd Parallel North v. E Street Denim Co.*, 286 F.3d 401, 404 (7th Cir. 2002). Anticompetitive

effect must be specifically alleged.  In *Car Carriers,* the Seventh Circuit upheld dismissal of a complaint on the basis that the plaintiff had not alleged an anticompetitive effect:

> The fatal flaw in these pleadings is the absence of any allegation, either direct or inferential, of an anticompetitive effect.  In this regard, it is important to note that the egregiousness of the defendants' behavior does not, by itself, constitute a violation of § 1. Tortious activities in the form, for example, of unfair competition do not contravene the antitrust laws unless accompanied by the requisite anticompetitive effect. Losing business to a competitor is an inevitable consequence of the economic system that the Sherman Act was designed to protect; some enterprises will prevail and others will not, but it is the function of § 1 to compensate the unfortunate only when their demise is accompanied by a generalized injury to the market. As the Supreme Court has aptly stated, the antitrust laws were designed to protect competition, not merely competitors.

745 F.2d at 1109 (citations omitted).

The absence of allegations of injury to the market "is ordinarily fatal to the existence of a cause of action."  *Banks v. NCAA*, 977 F.2d 1081, 1087-88 (7th Cir. 1992).  *See also BCB Anesthesia Care, Ltd. v. Passavant Mem'l Area Hosp. Ass'n*, 36 F.3d 664, 669 (7th Cir. 1994) (affirming dismissal where "little reason to infer that there [was] an impact on competition within the relevant market."); *Havoco of Am., Ltd. v. Shell Oil Co*., 626 F.2d 549, 554 (7th Cir. 1980) ("the absence of a sufficient allegation of anticompetitive effects in a Sherman Act complaint is fatal."); *Funteas*, 2005 WL 736226 at *4 (granting a motion to dismiss an antitrust claim where the plaintiff failed to allege any indication in the complaint that defendant's actions caused an adverse impact on the relevant market or somehow harmed consumers).

The relevant market according to the complaint is "computer programs," or maybe "computer software."  Compl. at 2.  Plaintiff fails to define either of these purported markets, and their vagueness and over-breadth alone is reason to dismiss for failure to sufficiently allege a relevant market. *Sanderson v. Spectrum Labs, Inc.*,  227 F. Supp.2d 1001, 1012 (N.D. Ind. 2000) (failed to identify a relevant geographic market).  Clearly, not all "computer programs" compete

with or are substitutes for programs covered by the License.  Conversely, this is not the only license used for the distribution of computer programs.

Even assuming plaintiff alleged a cognizable market, however, there is no allegation or even an indication in the complaint that defendants' actions restrained trade in the market for "computer programs," or caused any anticompetitive effects.  In fact, there is no allegation that the defendants' actions restrained anything in that market.  As discussed in detail above, the complaint only discusses the alleged adverse effect on plaintiff's ability to compete; it does not address any adverse effect on competition or on consumers.  Plaintiff has wholly failed to state any claim under the antitrust laws due to inherent defects in the nature of his alleged injury, and the case must therefore be dismissed with prejudice.

### C.    *Plaintiff Fails To Allege Any Defendant Has Market Power.*

Because anticompetitive effects are difficult to measure, the Seventh Circuit "has adopted a threshold requirement, a 'shortcut' as it were, that the plaintiff needs to show that the defendant has market power. A company has market power if it can raise prices above a competitive level without losing its business." *42nd Parallel,* 286 F.3d at 404 (citations omitted).

Even this simplified requirement is not met here as the plaintiff fails to allege IBM, or any defendant, had market power.  Nowhere in the complaint does it allege, or even suggest, that any defendant had the power to raise prices above a competitive level.  As with the other defects, this pleading's failure warrants dismissal of the complaint.

### CONCLUSION

Plaintiff's bare-bones complaint fails to meet even the most liberal pleading requirements in an antitrust case.  These minimal allegations, coupled with the language of the GNU General

Public License, demonstrate that plaintiff has pled himself out of court by alleging facts that show he has neither antitrust standing nor recoverable antitrust injury, facts that are inherent in who the plaintiff is and therefore cannot be cured by amendment.  Plaintiff also fails to allege any facts whatsoever concerning any combination or conspiracy under Section 1.  Further, under the rule of reason, plaintiff fails to allege any unreasonable restraint of trade, anticompetitive effects, or market power in a relevant market.  IBM accordingly requests this case be dismissed with prejudice under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Respectfully submitted,

s/ Michael Gottschlich
Michael Gottschlich (#22668-49)
Kendall Millard (#25430-49)
Barnes & Thornburg LLP
11 South Meridian Street
Indianapolis, Indiana 46204
Telephone:  (317) 236-1313
Facsimile:  (317) 231-7433

Attorneys for Defendant, International
Business Machines Corporation

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on the 30th day of June, 2005, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to the following by operation of the Court's electronic filing system:

**Curtis W. McCauley**            mccauley@icemiller.com
**Philip A. Whistler**            philip.whistler@icemiller.com

The above filing will also be served via U.S. mail on the following, and all attorneys that the Court's notice of delivery indicates will be delivered by other means:

Daniel Wallace
P. O. Box 572
New Palestine, IN  46163


                                             s/ Kendall Millard
                                              Kendall Millard